IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LISA SALES, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-1621 (PTG/IDD) |
| ) | |
| BOOZ ALLEN & HAMILTON, INC., ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM ORDER

This matter is before the Court on Defendant Booz Allen & Hamilton, Inc.'s Amended Motion to Dismiss (Dkt. 20) ("Motion"). Plaintiff Lisa Sales filed this action against Defendant, her former employer, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq*. Dkt. 14. The Court heard argument and took the matter under advisement. Dkt. 23. For the reasons that follow, the Court grants Defendant's Motion, and dismisses Count 2 with prejudice and Counts 1, 3, and 4 without prejudice.

### I.   Background[1]

In August 2011, Plaintiff began her employment with Defendant as an Associate. Dkt. 14 ¶¶ 13, 17, at 3.[2] In March 2017, Plaintiff joined a project team where she was the only female

---

[1] In considering a motion to dismiss for failure to state a claim, as is the case here, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

[2] At certain points in the Amended Complaint, paragraph numbering is repetitive and inconsistent. Citations to the Amended Complaint herein include the paragraph number as well as page number.

employee. *Id.* ¶¶ 30–31, at 6–7. After joining the team, Plaintiff overheard her male teammates complain about a woman joining the team, even referring to Plaintiff as "Boobs Allen." *Id.* ¶¶ 32–33, at 7. Plaintiff's teammates refused to allow her to drive a rental car and directed her to take phone calls away from the team due to the sound of her voice. *Id.* ¶¶ 34–35, at 7. During this timeframe, another colleague charged expenses to Plaintiff's hotel room. *Id.* ¶ 38, at 7.

In May 2017, Plaintiff met with a member of Human Resources and reported that her male colleagues were subjecting her to sex-based harassment. *Id.* ¶ 39, at 8. Human Resources indicated that the matter would be forwarded to Employee Relations for further investigation. *Id.* ¶ 40, at 8. In February 2018, Plaintiff was told that the investigation "fell through the cracks" but would be reopened. *Id.* ¶¶ 41–42, at 8. Plaintiff repeatedly requested updates regarding the investigation but did not receive a response. *Id.* ¶ 43, at 8. On May 1, 2019, Plaintiff was told that her claims of harassment were not substantiated. *Id.* ¶ 44, at 8.

On January 11, 2019, Plaintiff asked a senior vice president whether Defendant was considering a pay equity assessment to determine whether there were "unjustified differences in pay, such as between men and women." *Id.* ¶ 29, at 5. Plaintiff's inquiry was based on her review of data Human Resources had shared concerning pay information. *Id.* ¶ 27, at 4. The senior vice president responded that Defendant had conducted such an assessment but did not provide a copy of the findings. *Id.* ¶ 39, at 5.

From late 2019 through early 2020, Plaintiff asked her internal bosses for a market salary adjustment. *Id.* ¶ 40, at 5. Her request was denied for budgetary reasons. *Id.* ¶ 41, at 5. In October 2020, Plaintiff asked the CEO about Defendant's focus on pay equity, particularly for women of color, in a video-recorded virtual chat for all employees. *Id.* ¶ 42, at 5. In November 2020, Plaintiff told Elizabeth Talbot, a principal/director, that she believed she was underpaid as compared to her

male colleagues. *Id.* ¶ 44, at 6. In December 2020, Ms. Talbot discussed Plaintiff's concerns with Plaintiff. *Id.* ¶ 45, at 6. Ms. Talbot confirmed that Plaintiff was compensated far below mid-range for similar employees. *Id.* ¶ 46, at 6.

On February 5, 2021, a senior Human Resources associate asked Plaintiff to schedule a time to discuss Plaintiff's pay equity concerns. *Id.* ¶ 47, at 6. The senior Human Resources associate, however, failed to appear at the meeting or reschedule it. *Id.* In 2021, Plaintiff received a market salary adjustment. *Id.* ¶ 48, at 6. Despite the adjustment, Plaintiff was still earning below the mid-range for her job title and experience. *Id.*

On March 17, 2021, Defendant featured Plaintiff in a company newsletter touting her "work in favor of the passage of the Equal Rights Amendment," on other women's issues, and "on behalf of victims of sexual and domestic assault." *Id.* ¶ 49, at 9. On May 1, 2021, *Yahoo! News* published an article featuring Plaintiff as a survivor of sexual assault and her subsequent advocacy. *Id.* ¶¶ 52–53, at 9–10. The article noted that when Plaintiff contacted Defendant's security officers after learning her assailant possessed firearms, that the security officers interviewed her but took no further action. *Id.* ¶ 54, at 10.

On April 27, 2021, Plaintiff notified Ms. Talbot about the upcoming article. *Id.* ¶ 55, at 10. Ms. Talbot told Plaintiff she was brave for her participation. *Id.* ¶ 56, at 10. After the article was published, Defendant changed its media policy to require an individual to notify Defendant and use good judgment about topics that could have a negative impact on Defendant's reputation. *Id.* ¶ 60, at 11.

On July 1, 2021, Plaintiff participated in a virtual meeting with Employee Relations representatives. *Id.* ¶ 68, at 12. Plaintiff was immediately asked about the article and whether she had other contact with the media regarding its contents. *Id.* ¶ 70, at 12. Given that the discussion

of the article, which focused on Plaintiff's sexual assault, and Plaintiff's general distrust of Employee Relations based on how it handled her claims of sex-based harassment, Plaintiff ended the meeting after eleven minutes. *Id* ¶¶ 71, 75, at 12–13.

On July 14, 2021, Plaintiff received a package with two termination letters. *Id.* ¶ 90, at 15. The first letter stated that she was terminated effective July 9, 2021, and a second letter (dated July 12, 2021) stated that her termination would be effective July 16, 2021. *Id.* The July 9th letter stated that termination was the result of Plaintiff's violation of several company policies. *Id.* ¶ 91, at 15. The cited policies included the Acceptable Use of IT Assets and Computing Environments Policy, the Cooperating with Investigations and Making External Disclosures Policy, and the Political Activities and Lobbying Policy. *Id.*

On November 4, 2021, Plaintiff filed a complaint with the EEOC, and received a notice of right to sue on August 30, 2023. *Id.* ¶¶ 10–11, at 3. On November 28, 2023, Plaintiff filed her first complaint against Defendant. Dkt. 1. On February 29, 2024, Defendant filed a motion to dismiss. Dkt. 7. On March 14, 2024, Plaintiff filed the instant Amended Complaint as of right. *See* Dkt. 14. Plaintiff brings four counts against Defendant under Title VII of the Civil Rights Act, including sex discrimination (Count 1); retaliation based on Plaintiff's complaints of sex-based harassment (Count 2); retaliation based on Plaintiff's participation as a witness in another sex-based discrimination case against Defendant (Count 3); and retaliation based on Plaintiff questioning Defendant's pay practices (Count 4). Dkt. 14.

## II.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

4

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Accordingly, a complaint is insufficient if it relies upon "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted). When reviewing a 12(b)(6) motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

### III. Analysis

#### A. Sex Discrimination (Count 1)

Plaintiff's first count alleges sex discrimination in violation of Title VII.[3] Defendant seeks to dismiss this Count alleging that certain allegations are time-barred and Plaintiff also fails to state a claim as a matter of law.

When pleading a Title VII claim, a claimant is "required to allege facts to satisfy the elements of a cause of action created by" Title VII. *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). While plaintiffs need not yet satisfy the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive a motion to dismiss claims brought under Title VII, "courts may look to the requirements of a prima facie case as a guide in assessing the plausibility of a plaintiff's claim for relief." *Miller v.*

---

[3] In her Opposition, Plaintiff cites to cases involving hostile work environment claims, even though Count 1 is a sex-discrimination claim. Dkt. 21 at 11. At the May 9, 2024 hearing, Plaintiff conceded that she did not bring a hostile work environment claim as she failed to raise it in her EEOC Charge, and that Count I only asserts a claim of sex discrimination. Tr. of May 9, 2024 Hearing at 15:17–25, Dkt. 24 (July 23, 2024).

*Gruenberg*, 2017 WL 1227935, at *4 (E.D. Va. Mar. 31, 2017) (citation omitted), *aff'd as modified*, 699 F. App'x 204 (4th Cir. 2017).

A complainant may survive a motion to dismiss as to a claim of discrimination when they plead "sufficient facts to justify an inference, plausibly and reasonably indulged, that the [defendant] treated [the plaintiff] differently from the way [the defendant] has treated nonminority [individuals] under arguably similar circumstances, and that [the defendant] did so on account of [a protected characteristic.]" *Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017). Any factual allegations must include some level of "factual detail" and may not be "just the sort of 'labels, conclusions, recitations of a claims' elements and naked assertions devoid of further factual enhancement[.]'" *Nadendla v. WakeMed*, 24 F.4th 299, 306 (4th Cir. 2022) (citation omitted).

Moreover, for claims of discrimination or retaliation under Title VII, a court cannot look at discrete acts beyond the statutorily prescribed lookback period. *Sarraj v. N. Virginia Elec., Coop.*, 2022 WL 2820553, at *4 (E.D. Va. July 18, 2022). In this case, the Court may not consider allegations concerning discrete discriminatory acts that occurred prior to May 2021, which is 180 days before Plaintiff alleges to have filed her EEOC Charge (on November 4, 2021).[4] Dkt. 14 ¶ 10, at 3; 42 U.S.C. § 2000e-5(e)(1); *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir.

---

[4] As to the duration of the lookback period, Defendant erroneously applies a 300-day lookback period. *See* Dkt. 18 at 10 n.7; *see also* Tr. of May 9, 2024 Hearing at 6:6–25, Dkt. 24 (repeating the same position when asked by the Court). Plaintiff does not oppose this claim. Section 2000e-5(e)(1) applies the 300-day lookback period in deferral states like Virginia only where "the person aggrieved has initially instituted proceedings with a State or local agency[.]" Otherwise, a lookback period of 180 days applies. 42 U.S.C. § 2000e-5(e)(1). In her Amended Complaint, Plaintiff does not allege that she dual-filed a complaint or charge with Virginia. Rather, she alleges that she filed with the E.E.O.C. and even claims that she did so within 180 days of her termination. Dkt. 14 ¶ 10, at 3. Therefore, in the instant matter, a 180-day lookback period applies. Neither party attached the Charge to their relevant pleadings, so this Court does not have the benefit of analyzing the Charge itself and thus must hew to the four corners of the Amended Complaint.

6

2005) ("a violation not made the subject of a timely charge is 'the legal equivalent of a discriminatory act which occurred before the statute was passed' and is 'merely an unfortunate event in history which has no present legal consequences'" (citation omitted)).

First as to the timing issue, Plaintiff's allegations referring to comments made by male colleagues about having a woman join their team and other derogatory statements are time-barred, as they allegedly occurred in 2017. Dkt. 14 ¶¶ 30, 32–33, at 7. This would be true whether a 300-day or 180-day lookback period applied. Plaintiff's allegations referring to complaints made regarding pay disparities in 2016, 2019, and 2020 are similarly time-barred. Id. ¶¶ 27–29, 39–45, at 4–6. At the May 9th hearing, Plaintiff conceded that the time-barred claims are not actionable, but instead provide context for a claim that her termination was itself discriminatory on account of sex. Tr. of May 9, 2024 Hearing at 16:2–19, Dkt. 24.

Moreover, any allegations of continued pay disparities and resulting pay raise in 2021 would also be time-barred if the 180-day lookback period applies.[5] Id. ¶ 48, at 6. Even if not time-barred, Plaintiff still fails to state a claim as to those allegations as a matter of law. Plaintiff alleges that she was "still earning below the mid-range for her job title and experience," but earlier alleges that this comparison was in reference to "similar employees," and not whether those employees were paid differently because of their sex. Id. ¶¶ 46, 48, at 6. Thus, Plaintiff has failed to allege that she was treated differently from similarly situated employees outside the protected class.

Plaintiff alleges that Defendant discriminated against her on the basis of sex when she was terminated. Dkt. 14 ¶ 100, at 16. Plaintiff identifies the date of her termination as July 16, 2021.

---

[5] If a 300-day lookback period applied under 42 U.S.C. § 2000e-5, this would not be time-barred. The 300-day lookback period would extend back to January 2021. In the instant Motion, Defendant states that Plaintiff received her raise in or around March 2021. Dkt. 18 at 6. Plaintiff does not contest this allegation in her Opposition. In the Amended Complaint, Plaintiff is silent as to the month in 2021 when she received a raise. See Dkt. 14 ¶ 48, at 6.

7

*Id.* ¶ 10, at 3; *id.* ¶ 90, at 15. This is the only act that is within the 180-day window. But even here, Plaintiff claim fails as a matter of law.

Plaintiff alleges that she was terminated after her feature in a public May 2021 *Yahoo! News* article. *Id.* ¶¶ 52, 55, at 9–10. She alleges that Defendant discriminated against her because she is "a woman who spoke out about sexual assault." *Id.* ¶ 98, at 16. However, this is merely a conclusory allegation. Plaintiff fails to allege facts that plausibly give rise to an inference that Defendant treated Plaintiff differently than others because of her sex. For these reasons, Plaintiff's claim of sex discrimination in Count 1 fails.

Next, the Court considers whether dismissal should be with or without prejudice. Generally, Federal Rule of Civil Procedure 15(a)(2) states that a "court should freely give leave [to amend] when justice so requires." As such, "courts heed the Supreme Court's instruction that leave to amend should be refused only in situations of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to a defendant, or futility of amendment." *Morefield v. Bailey*, 959 F. Supp. 2d 887, 907 (E.D. Va. 2013) (citing *Glaser v. Enzo Biochem, Inc.*, 126 Fed. App'x. 593, 602 (4th Cir. 2005)). Even so, "[i]n the Eastern District of Virginia, an amendment may be considered futile where [p]laintiffs have previously had two full opportunities to plead their claim." *Iron Workers Loc. 16 Pension Fund v. Hilb Rogal & Hobbs Co.*, 432 F. Supp. 2d 571, 595 (E.D. Va. 2006). Though Plaintiff has filed two complaints, the instant Amended Complaint is the first time wherein this Court has adjudicated the merits of a motion to dismiss. Accordingly, the Court shall grant Plaintiff leave to amend her Amended Complaint so as to attempt to state a claim that Plaintiff's termination itself was discriminatory on account of her sex. Thus, the dismissal of Count 1 will be without prejudice.

8

### B. Retaliation (Counts 2, 3, and 4)

Plaintiff brings three separate retaliation claims based on Plaintiff complaining of sex-based harassment (Count 2); participating as a witness in another discrimination case against Defendant (Count 3); and questioning Defendant's pay practices (Count 4).

To state a claim for retaliation, Plaintiff must plausibly allege "that: (1) she engaged in a protected activity; (2) an adverse action was taken against her by the Defendant; and (3) there was a causal connection between the first two elements." *Forgus v. Mattis*, 753 F. App'x 150, 154 (4th Cir. 2018) (citing *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007)). As to alleging an adverse action, a plaintiff is "required to allege facts sufficient to allow an inference 'that a reasonable employee would have found the challenged action[s] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 154 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). And as to causation, the Fourth Circuit has held that a two-month temporal gap between protected activity and adverse employment action sufficiently weakened the required causal link. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022). This weakening can be allayed if a plaintiff plausibly alleges that there was another natural decision point where an adverse action would likely happen. *Id.* (citing *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003)).

Similar to Plaintiff's claim of discrimination, the Court may not consider discrete acts alleged in the Amended Complaint that occurred 180 days prior to November 4, 2021 in support of Plaintiff's claims of retaliation. *Sarraj*, 2022 WL 2820553, at *4. As to all counts, Plaintiff argues that the adverse action she suffered was her termination. *See* Dkt. 21 at 15–16. Defendant does not contest that termination is an adverse action.

9

### 1. Count 2 (Retaliation for Reporting Sex-Based Harassment)

As to Count 2, even assuming, without deciding, that the Court may consider Plaintiff's 2017 complaint concerning her experience of harassment, Plaintiff alleges that an investigation into her 2017 complaint was completed in May 2019. Dkt. 14 ¶ 44, at 8. This was more than two years prior to Plaintiff's termination in July 2021.

While Plaintiff may be able to allay a two-year gap by showing that her termination in July 2021 was Defendant's first opportunity to retaliate against her or was a natural decision point to retaliate, Plaintiff does not allege any facts that allow the Court to draw a plausible inference to this effect. *King*, 328 F.3d at 151 n.5. Plaintiff thus fails to a plausibly allege a causal connection between the protected activity and the adverse action. As such, the Court will grant Defendant's Motion as to Count 2.

### 2. Count 3 (Retaliation for Participating as Witness)

As to Count 3, Defendant argues that Plaintiff's claim of retaliation in Count 3—which concerns her alleged participation in another discrimination lawsuit—fails to plausibly allege that decisionmakers had knowledge of Plaintiff's participation.[6] Dkt. 18 at 25–26.

"[T]he decisionmaker's knowledge of the protected activity is 'essential to a retaliation claim.'" *Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (citation omitted). At this stage,

---

[6] Defendant points out that Plaintiff fails to contest Defendant's assertion in the instant Motion. Dkt. 22 at 13–14. Such failure may amount to concession. *Intercarrier Commc'ns, LLC v. Kik Interactive, Inc.*, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (finding that where a party does not respond to an argument in its opposition, the argument is "effectively conced[ed]"). During argument on May 9, 2024, however, Plaintiff argued that she had plausibly alleged Count 3 on the merits and focused on the temporal proximity between the protected activity and adverse action. Tr. of May 9, 2024 Hearing at 18:9–19:11, Dkt. 24. The Court will thus address the merits of the claim herein.

there is a "low pleading standard[.]" *Id.* Even so, Plaintiff must allege "sufficiently specific facts that would permit this Court to make a 'reasonable inference' of causation." *Id.* (citation omitted).

Defendant argues that Plaintiff's first allegation that she informed Defendant of her participation as a witness was July 12, 2021, when she texted a member of Defendant's Human Resources team. Dkt. 14 ¶ 84, at 14. Plaintiff alleges that the first termination letter she received was dated July 9, 2021. *Id.* ¶ 90, at 15. On these facts, there is no plausible inference that any decisionmaker had knowledge of Plaintiff's participation as a witness at the time they decided to terminate Plaintiff. For these reasons, the Court will grant Defendant's Motion and dismiss Count 3.

However, the Court will dismiss Count 3 without prejudice, as Plaintiff indicated during oral argument that she may allege facts not currently before the Court that could plausibly establish temporal proximity between her participation in the lawsuit and the adverse action. *See* Tr. of May 9, 2024 Hearing at 18:9–19:11, Dkt. 24 (arguing that Plaintiff was named as a witness in a lawsuit less than two months before her termination and that it would be "implausible" that Defendant's legal department—which would have been aware of Plaintiff's participation as a witness—would not have also been involved in Plaintiff's termination). The Court thus finds that amendment is not necessarily futile at this point and will grant leave to amend accordingly.

### 3.   Count 4 (Retaliation for Questioning Defendant's Pay Practices)

Finally, as to Count 4, Defendant argues that Plaintiff does not plausibly allege that she engaged in protected activity, and even if so, that any protected activity is causally connected to her July 2021 termination. Dkt. 18 at 20–25. Even if Plaintiff's allegations concerning her 2019, 2020, and 2021 discussions with a senior vice president, a senior associate, a principal/director, Defendant's CEO, another principal/director, and a member of the Human Resources team

11

plausibly constitute protected activity, Plaintiff also alleges that she received a pay raise in 2021 following these discussions. Dkt. 14 ¶ 29, at 5; *id.* ¶ 40, at 5; *id.* ¶ 42, at 5; *id.* ¶ 44, at 6; *id.* ¶ 47, at 6; *id.* ¶ 48, at 6.

Plaintiff does not allege that she had raised further concerns regarding her pay between her 2021 raise and her 2021 termination. The only factual allegation concerning her post-raise conduct regarding pay is a July 12, 2021 text, which Plaintiff herself alleges was sent after her first termination letter was dated. Dkt. 14. ¶ 84, at 14; *id.* ¶ 90, at 15. During the May 9, 2024 hearing, Plaintiff conceded that based on these facts, "there's no ability to infer a connection necessarily on a temporal basis[.]" Tr. of May 9, 2024 Hearing at 17:5–7, Dkt. 24. So, even assuming that Plaintiff's conduct that occurred before her 2021 raise was protected activity, Plaintiff fails to plausibly allege a causal connection between any post-raise conduct and her termination. The Court will thus grant Defendant's Motion as to Count 4 for Plaintiff's failure to state a claim and dismiss the claim accordingly.

However, the Court will dismiss Count 4 without prejudice. As with Count 3, Plaintiff suggested during oral argument that if given leave to amend, she may plausibly allege facts sufficient to survive a subsequent motion to dismiss. Specifically, during the May 9 hearing, as to this claim, Plaintiff stated that she "do[es] believe that [Defendant] terminated her at the first available opportunity." *Id.* at 17:7–8.

It is true that a longer stretch of time between the alleged protected activity and adverse action may still sufficiently show causation if a plaintiff plausibly alleges that there was another natural decision point that was the first available opportunity for Defendant to retaliate against Plaintiff. *King*, 328 F.3d at 151 n.5. Plaintiff does not sufficiently allege such facts in the instant Amended Complaint, but the Court does not have a basis to conclude that subsequent amendment

would be futile at this point. As such, the Court will grant leave such that Plaintiff may attempt to sufficiently amend Count 4 in a subsequent complaint.

## IV. Conclusion

For the foregoing reasons, the Court shall grant Defendant's Amended Motion to Dismiss (Dkt. 20). The Court shall dismiss Count 2 with prejudice and Counts 1, 3, and 4 without prejudice. Accordingly, it is hereby

**ORDERED** that Defendant's Amended Motion to Dismiss (Dkt. 20) is **GRANTED**; it is further

**ORDERED** that Count 2 (Retaliation, Harassment Complaints) is **DISMISSED**; it is further

**ORDERED** that Count 1 (Sex Discrimination), Count 3 (Retaliation, Participation as Witness) and Count 4 (Retaliation, Pay Practice Questions) are **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiff shall have leave to file her Second Amended Complaint within twenty-one (21) days of the date of this Order.

Entered this 16th day of January 2025
Alexandria, Virginia

Patricia Tolliver Giles
United States District Judge